## UNITED STATES of America
### v.
### Dwight L. LIEB, individually and d/b/a Antonian Apartments.
### Civ. A. No. SA71CA267.

United States District Court,
W. D. Texas,
San Antonio Division.
Oct. 13, 1971.

John E. Clark, Hugh Patrick Shovlin, Asst. U. S. Attys., San Antonio, Tex., for plaintiff.

Seagal V. Wheatley, H. Gordon Davis, Harvey L. Hardy, San Antonio, Tex., for defendant.

---

24. See Zuber v. Allen, *supra*.

SPEARS, District Judge:

The government, in asking injunctive relief, claims that defendant violated Executive Order No. 11615,[1] and the regulations promulgated pursuant thereto, which imposed a ninety day stabiliza-

1. 36 Fed.Reg. 15727 (1971); 1971 U.S. Code Cong. & Adm.News Pamph. No. 7, p. 1961.

WHEREAS, in order to stabilize the economy, reduce inflation, and minimize unemployment, it is necessary to stabilize prices, rents, wages, and salaries; and

WHEREAS, the present balance of payments situation makes it especially urgent to stabilize prices, rents, wages, and salaries in order to improve our competitive position in world trade and to protect the purchasing power of the dollar:

NOW, THEREFORE, by virtue of the authority vested in me by the Constitution and statutes of the United States, including the Economic Stabilization Act of 1970 (P.L. 91–379, 84 Stat. 799), as amended, (50 U.S.C.A. App. § 2091), it is hereby ordered as follows:

Section 1. (a) Prices, rents, wages, and salaries shall be stabilized for a period of 90 days from the date hereof at levels not greater than the highest of those pertaining to a substantial volume of actual transactions by each individual, business, firm or other entity of any kind during the 30-day period ending August 14, 1971, for like or similar commodities or services. If no transactions occurred in that period, the ceiling will be the highest price, rent, salary or wage in the nearest preceding 30-day period in which transactions did occur. No person shall charge, assess, or receive, directly or indirectly in any transaction prices or rents in any form higher than those permitted hereunder, and no person shall, directly or indirectly, pay or agree to pay in any transaction wages or salaries in any form, or to use any means to obtain payment of wages and salaries in any form, higher than those permitted hereunder, whether by retroactive increase or otherwise.

(b) Each person engaged in the business of selling or providing commodities or services shall maintain available for public inspection a record of the highest prices or rents charged for such or similar commodities or services during the 30-day period ending August 14, 1971.

(c) The provisions of sections 1 and 2 hereof shall not apply to the prices charged for raw agricultural products.

Sec. 2. (a) There is hereby established the Cost of Living Council which shall act as an agency of the United States and which is hereinafter referred to as the Council.

(b) The Council shall be composed of the following members: The Secretary of the Treasury, the Secretary of Agriculture, the Secretary of Commerce, the Secretary of Labor, the Director of the Office of Management and Budget, the Chairman of the Council of Economic Advisers, the Director of the Office of Emergency Preparedness, and the Special Assistant to the President for Consumer Affairs. The Secretary of the Treasury shall serve as Chairman of the Council and the Chairman of the Council of Economic Advisers shall serve as Vice Chairman. The Chairman of the Board of Governors of the Federal Reserve System shall serve as adviser to the Council.

(c) Under the direction of the Chairman of the Council a Special Assistant to the President shall serve as Executive Director of the Council, and the Executive Director is authorized to appoint such personnel as may be necessary to assist the Council in the performance of its functions.

Sec. 3. (a) Except as otherwise provided herein, there are hereby delegated to the Council all of the powers conferred on the President by the Economic Stabilization Act of 1970.

(b) The Council shall develop and recommend to the President additional policies, mechanisms, and procedures to maintain economic growth without inflationary increases in prices, rents, wages, and salaries after the expiration of the 90-day period specified in Section 1 of this Order.

(c) The Council shall consult with representatives of agriculture, industry, labor and the public concerning the development of policies, mechanisms and procedures to maintain economic growth without inflationary increases in prices, rents, wages, and salaries.

(d) In all of its actions the Council will be guided by the need to maintain consistency of price and wage policies with fiscal, monetary, international and other economic policies of the United States.

(e) The Council shall inform the public, agriculture, industry, and labor concerning the need for controlling inflation and shall encourage and promote voluntary action to that end.

Sec. 4. (a) The Council, in carrying out the provisions of this Order, may (i) prescribe definitions for any terms used herein, (ii) make exceptions or grant ex-

tion period on prices, rents, wages, and salaries, effective August 15, 1971. The Court agrees with the government's position and has granted the injunction sought. This memorandum shall constitute the findings of fact and conclusions of law. See Rule 52(a) F.R.Civ.P.

Defendant, the owner of the Antonian Apartments, a 104 unit complex in San Antonio, Texas, on April 1, 1971 raised the monthly rental on all newly rented apartments by $10.00; however, apartments which had been rented prior thereto continued to be rented at the rate charged before that date.

On July 28, 1971, and again on August 26, 1971, a number of occupants of the Antonian Apartments, who had rented their apartments prior to April 1, 1971, were notified by letter that their rental rates would be raised $10.00 per month on September 1, 1971, in accordance with the rental schedule that had previously been imposed on new occupants. The raise became effective on the date indicated, which was fifteen days after the stabilization period began, and the increased rent was still being charged on the date of the hearing herein. No exemption, exception, or adjustment, within the purview of existing regulations, was sought by the defendant.

The defendant's complex is comprised of four classes of apartments: Class A, Class B, Class C, and Class D. Each apartment within one of the classes is substantially the same as all others within the class. The rental schedules imposed upon newly rented apartments before and after April 1, 1971, were as follows:

| Before April 1 | | After April 1 |
|---|---|---|
| Class A | $155 | $165 |
| Class B | $165 | $175 |
| Class C | $195 | $205 |
| Class D | $220 | $230 |

On August 14, 1971, the day before the "Price-Wage Freeze", defendant had rented the following percentages of his apartments at the April, 1971 rental rate:

| Class A | 12.5% |
|---|---|
| Class B | 29.1% |
| Class C | 25.0% |
| Class D | 25.0% |

emptions, (iii) issue regulations and orders, and (iv) take such other actions as it determines to be necessary and appropriate to carry out the purposes of this Order.

(b) The Council may redelegate to any agency, instrumentality or official of the United States any authority under this Order, and may, in administering this Order, utilize the services of any other agencies, Federal or State, as may be available and appropriate.

(c) On request of the Chairman of the Council, each Executive department or agency is authorized and directed, consistent with law, to furnish the Council with available information which the Council may require in the performance of its functions.

(d) All Executive departments and agencies shall furnish such necessary assistance as may be authorized by section 214 of the Act of May 3, 1945 (59 Stat. 134; 31 U.S.C. 691).

Sec. 5. The Council may require the maintenance of appropriate records or other evidence which are necessary in carrying out the provisions of this Order, and may require any person to maintain and produce for examination such records or other evidence, in such form as it shall require, concerning prices, rents, wages, and salaries and all related matters. The Council may make such exemptions from any requirement otherwise imposed as are consistent with the purposes of this Order. Any type of record or evidence required under regulations issued under this Order shall be retained for such period as the Council may prescribe.

Sec. 6. The expenses of the Council shall be paid from such funds of the Treasury Department as may be available therefor.

Sec. 7. (a) Whoever willfully violates this Order or any order or regulation issued under authority of this Order shall be fined not more than $5,000 for each such violation.

(b) The Council shall in its discretion request the Department of Justice to bring actions for injunctions authorized under Section 205 of the Economic Stabilization Act of 1970 whenever it appears to the Council that any person has engaged, is engaged, or is about to engage in any acts or practices constituting a violation of any regulation or order issued pursuant to this Order.

This Court has jurisdiction under the provisions of Section 205 of the Economic Stabilization Act of 1970,[2] as well as under Title 28 U.S.C. § 1345.

The defendant does not contest the validity of the Executive Order itself, nor does he question the authority of Congress to delegate powers to the President under the Economic Stabilization Act of 1970, as amended. His contention is that since more than 10% of his actual transactions involving the higher rentals in each class of apartments occurred during the nearest preceding 30–day period,[3] the Order does not preclude him from bringing all rentals into conformity with rents on the apartments which were rented after April 1, 1971. On the other hand, the government says that defendant was prohibited from charging any more than he had charged for the same units during the base period. At issue, therefore, is the interpretation of the Act, the Executive Order, and the rules and regulations promulgated pursuant thereto.

Section 1(a) of the Executive Order reads as follows:

"Prices, rents, wages, and salaries shall be stabilized for a period of 90 days from the date hereof at levels not greater than the highest of those pertaining to a substantial volume of actual transactions by each individual, business, firm or other entity of any kind during the 30–day period ending August 14, 1971, for like or similar commodities or services. If no transactions occurred in that period, the ceiling will be the highest price, rent, salary or wage in the nearest preceding 30–day period in which transactions did occur. No person shall charge, assess, or receive, directly or indirectly in any transaction prices or rents in any form higher than those permitted hereunder, and no person shall, directly or indirectly, pay or agree to pay in any transaction wages or salaries in any form, or to use any means to obtain payment of wages and salaries in any form, higher than those permitted hereunder, whether by retroactive increase or otherwise."

Defendant insists that he was merely bringing all rental charges after September 1 up to a level no greater "than the highest of those pertaining to a substantial volume of actual transactions * * * during the 30–day period ending August 14, 1971," and that he is being denied the benefit of the "substantial volume of actual transactions" treatment referred to in the President's Order. In this connection, he argues that the Cost of Living Council was without authority to initiate the regulation [4] which states:

Rents. The ceiling rent for commercial property, housing accommodations, hotels, motels, rooming houses, farms, and other establishments, together with all privileges, services, furnishings, furniture, equipment, facilities, improvements, and any other privileges connected with the use thereof shall be no greater than the highest rent charged for the *same* property during the base period. If the property was not rented during the base period, the ceiling price shall be no higher than the highest rent charged during the nearest preceding 30–day period prior to the base period. If the property was never previously rented, the ceiling rent shall be no higher than the ceiling rent charged for similar or comparable property in the locality or area. (Emphasis supplied.)

---

2. Pub.L. No. 91–379 (Aug. 15, 1970) as amended Pub.L. No. 92–8 (March 31, 1971) and Pub.L. No. 92–15 (May 18, 1971).

3. Under the Economic Stabilization Reg. No. 1, § 6 a (13), 36 Fed.Reg. 16515 (1971), promulgated by the Office of Emergency Preparedness "Substantial volume of transactions", under the President's Order, is determined as follows:

"The ceiling price is the price at or above which 10% of the actual transactions during the base period were made, except that in the case of increases in posted and effective prices during the base period, the base period itself will be considered to have begun at the time of the increase in posted and effective prices."

4. 36 Fed.Reg. 16515, § 3(b) (1971).

The defendant's position seems to be that Section 1(a) of the Executive Order restricts the Cost of Living Council to the precise language contained therein, and that the Council therefore, had no authority to dilute the "substantial volume of actual transactions" phrase used by the President. However, defendant overlooks the fact that in the same Order, which was entered as an emergency measure, the President has not only delegated to the Council all of the powers[4.1] (except as hereinafter stated) conferred on him by the Economic Stabilization Act of 1970, but he has empowered the Council to prescribe definitions for any terms used, to make exceptions, to grant exemptions, to issue regulations and orders, and to take such other actions as it may determine necessary and appropriate to carry out the purpose of the Order,[5] which was "to stabilize the economy, reduce inflation, and minimize unemployment." [6] In addition, the Council was given the power to redelegate its authority to any agency, instrumentality, or officials of the United States, and to utilize the services of any other agencies, Federal or State, as may be available and appropriate.[7]

It is abundantly clear from a reading of the entire Executive Order that the President intended to and did delegate all of his powers to the Cost of Living Council,[8] except insofar as prices charged for raw agricultural products were concerned.[9] In short the President turned the pressing economic problems of the nation over to the Cost of Living Council lock, stock and barrel, with few strings attached, as he had a right to do.[10] When he imposed this important responsibility upon the Council he wisely gave it autonomous power to discharge its heavy burden, even to placing its own definitions upon any terms used by him. This the Council has done, and although some of its regulations to that effect may, in some instances, actually conflict with general language used by the President, it cannot be said that it was not acting within the scope of the specific authority granted to it by him.[11] Under the circumstances, the regulations [12]

---

4.1  *Supra* note 1, § 3(a).

5.  *Supra* note 1, § 4(a).

6.  *Supra* note 1, Foreword.

7.  *Supra* note 1, § 4(b).

8.  *Supra* note 1.

9.  *Supra* note 1, § 1(c).

10.  Pub.L. No. 91–379, § 203 (Aug. 15, 1970) as amended Pub.L. No. 92–8 (March 31, 1971) and Pub.L. No. 92–15 (May 18, 1971). The President may delegate performance of any function under this title to such officers, departments and agencies of the United States as he may deem appropriate.

11.  Since the members of the Cost of Living Council are appointed by the President, and he has the inherent right to remove them from office, he has not irrevocably abrogated his responsibilities as the Chief Executive by delegating his powers in this area to the Council. In a very real and practical sense he still reserves the veto power over any action the Council may take, and there is no indication that he has been disturbed by the interpretations placed on his Order by the Council.

12.  It is significant to also note the regulation reflected in Section 601 of Economic Stabilization Circular No. 15, which reads as follows:

"601. *General* (1) Section 2(c) [4016] of Economic Stabilization Regulation No. 1 contains the general cover-all statement: 'No person shall offer, demand, or receive any rent higher than the maximum rent prevailing for the same or comparable property for a substantial number of transactions during the base period.' The section 2(c) 'comparable property' test should only be applied to newly-constructed housing and to existing property which has never been rented before.

"For existing, previously-rented property, rents cannot be increased over the level charged for the same property during the base period. Section 3(b) [4025] is a detailed statement of the policy for previously-rented property: 'Rents. The ceiling rent for commercial property, housing accommodations, hotels, motels, rooming houses, farms, and other establishments, together with all privileges, services, furnishings, furniture, equipment, facilities, improvements, and any other privileges connected with the use thereof shall be no greater than the highest rent charged for the same property during the base period. If the property was

promulgated by the Council are valid and the defendant during the 90–day "freeze" is limited to charging the same rentals he had charged for the same units during the base period.

As to the defendant's claim that he was denied due process of law, because there is no provision in the Act, the Executive Order, or the regulations, affording him an administrative hearing, it is noted that Section 205 [13] of the Act requires that an application for injunction on the part of any agency of the government must be brought in the proper United States District Court, thus assuring any alleged violator a hearing before his acts or practices may be enjoined.

In view of the foregoing, this Court holds that the Cost of Living Council had the complete authority to promulgate the regulations referred to; that the Economic Stabilization Act of 1970, as amended, together with Executive Order 11615, and the rules and regulations promulgated pursuant thereto, are not unconstitutional; that they do not deprive the defendant of due process; that they have not been arbitrarily enforced as to the defendant; and that the action of the defendant in increasing rents at the time he did so constituted a violation of said Act, the Executive Order, and the regulations promulgated pursuant thereto. As a consequence, this Court has caused the following order to be entered:

"It is, therefore, ORDERED, ADJUDGED and DECREED by the Court that the defendant be, and he is hereby, permanently enjoined, during the duration of Executive Order 11615, from charging, assessing, or receiving, directly or indirectly, for any existing or previously rented apartment, rents in any form in excess of that charged for the same apartment during the thirty-day period ending August 14, 1971; and

"The defendant is hereby ORDERED and mandatorily enjoined to restore the rents charged by him for each apartment to the level charged for the same apartment during the thirty-day period ending August 14, 1971, and to restore the status quo ante by making restitution to all tenants of all rents charged and received in excess of those amounts which were charged and received during the thirty-day period ending August 14, 1971; and

"It is further ORDERED that all court costs herein incurred shall be adjudged against defendant."

not rented during the base period, the ceiling price shall be no higher than the highest rent charged during the nearest preceding 30-day period prior to the base period. If the property was never previously rented, the ceiling rent shall be no higher than the ceiling rent charged for similar or comparable property in the locality or area."

13. Pub.L. No. 91–379, (Aug. 15, 1970) as amended Pub.L. No. 92–8 (March 31, 1971) and Pub.L. No. 92–15 (May 18, 1971). Whenever it appears to any agency of the United States, authorized by the President to exercise the authority contained in this section to enforce orders and regulations issued under this title, that any person has engaged, is engaged, or is about to engage in any acts or practices constituting a violation of any regulation or order under this title, it may in its discretion bring an action, in the proper district court of the United States or the proper United States court of any territory or other place subject to the jurisdiction of the United States, to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond. Upon application of the agency, any such court may also issue mandatory injunctions commanding any person to comply with any regulation or order under this title.