**UNITED STATES of America,**
**Plaintiff,**

**v.**

**INTONE CORPORATION, a Texas corporation, d/b/a Indiana Terrace Apartments, Lubbock Texas, Defendant.**

**Civ. A. No. 5–971.**

United States District Court,
N. D. Texas,
Lubbock Division.

Nov. 30, 1971.

---

Eldon B. Mahon, U. S. Atty., Fort Worth, Tex., Robert B. Wilson, Asst. U. S. Atty., Lubbock, Tex., for plaintiff.

Don Graf, Nelson, McCleskey, Harriger & Brazill, Lubbock, Tex., James M. Parker, Schlenker & Parker, Albuquerque, N. M., for defendant.

## MEMORANDUM OPINION AND ORDER

WOODWARD, District Judge.

This is an action brought by the government under the provisions of the current wage/price/rent freeze to enjoin defendant from raising its rents.

The defendant corporation owns and operates an apartment complex at 223 Indiana Avenue in Lubbock, Texas, consisting of 204 rental units. One hundred sixty-eight are one-bedroom apartments, 30 are two-bedroom apartments, and 6 are efficiency apartments. Commencing in April of 1971, the defendant corporation raised the monthly rent on these apartments to $160.00 for two-bedroom apartments, $125.00 for one-bedroom apartments, and $100.00 for efficiency apartments, with additional charges if more than two individuals occupied same or new furniture was placed therein. Beginning April 1, 1971, these increased rentals were charged to each new tenant; however, the defendant did not charge these increased rentals to the tenants who were occupying its apartments prior to that date. Between April 1 and August 14, 1971, 92 one-bedroom apartments, 12 two-bedroom apartments, and 5 efficiency apartments had been rented to new tenants at the higher rates. On July 30, 1971, the defendant sent written notices to those tenants for whom the increase had not been in effect advising them that effective August 15, 15, 1971, they too would be charged the increased monthly rentals. All of the one-bedroom apartments are similar, all of the two-bedroom apartments are similar, and all of the efficiency apartments are similar, both as to floor plan and furnishings, and there are no distinguishing characteristics within those classifications that would justify a variance in rent.

The United States Government filed suit against the defendant corporation alleging violation of the provisions of Protective Order 11615 promulgated by the President on August 14, 1971, and asking for the issuance of preliminary and permanent injunctions against the defendant prohibiting the increase in rent and requiring that the defendant refund the amount of the increase to those tenants who have already paid it.

A hearing was held in chambers with attorneys and parties present on the 19th day of November, 1971. At that hearing it was agreed that the government's claim and prayer for relief for any of the matters pertaining to rents due on and after November 13, 1971, would not be prosecuted. New regulations for that period have now been issued by the United States Government, and the defendant corporation will be governed by

such new regulations; but nothing herein contained shall prejudice either party concerning any rents to be paid or collected on or after November 13, 1971.

The above matters were stipulated and agreed to before the Court. It was further agreed that there would be no necessity for a later hearing on the permanent injunction, and that this hearing would encompass both the preliminary and the permanent injunctions.

The orders in question are:

(1) Executive Order 11615 signed by the President on August 15, 1971, providing in its pertinent parts as follows:

"Sec. 1(a) Prices, rents, wages, and salaries shall be stabilized for a period of ninety (90) days from the date hereof at levels not greater than the highest of those pertaining to a substantial volume of actual transactions by each individual, business, firm or other entity of any kind during the thirty (30) day period ending August 14, 1971, for like or similar commodities or services.

*  *  *  *  *  *

"Sec. 3(a) Except as otherwise provided herein, there are hereby delegated to the Council all of the powers conferred on the President by the Economic Stabilization Act of 1970.

*  *  *  *  *  *

"Sec. 4(a) The Council in carrying out the provisions of this Order, may (i) prescribe definitions for any terms used herein, (ii) make exceptions or grant exemptions (iii) issue regulations and orders, and (iv) take such other actions as it determines to be necessary and appropriate to carry out the purposes of this Order."

(2) Pursuant to such Executive Order 11615, the Cost of Living Council issued its Order No. 1 for the purposes of implementing Executive Order No. 11615. Said Order No. 1 provided in its pertinent parts as follows:

"Sec. 2(c) No person shall offer, demand, or receive any rent higher than the maximum rent prevailing for the same or comparable property for a substantial number of actual transactions during the base period.

*  *  *  *  *  *

"Sec. 3(b) Rents. The ceiling rent for commercial property, housing accommodations, hotels, motels, rooming houses, farms, and other establishments, together with all privileges, services, furnishings, furniture, equipment, facilities, improvements, and any other privileges connected with the use thereof shall be no greater than the highest rent charged for the same property during the base period. If the property was not rented during the base period the ceiling price shall be no higher than the highest rent charged during the nearest preceding thirty (30) day period prior to the base period. If the property was never previously rented, the ceiling rent shall be no higher than the ceiling rent charged for similar or comparable property in the locality or area.

*  *  *  *  *  *

"Sec. 13. 'Substantial volume of transactions'—is determined as follows: The ceiling price is the price at or above which ten percent (10%) of the actual transactions during the base period were made, except that in the case of increases in posted and effective prices during the base period, the base period itself will be considered to have begun at the time of the increases posted and effective prices."

(3) Economic Stabilization Circular No. 101 was issued with the provision that it is designed for general information only and that the statements therein are intended solely as general guides. It was made clear that the statements are not intended to constitute legal rulings for cases which do not conform to situations clearly intended to be covered by the guides. Economic Stabilization Circular No. 101 provides:

"601. General. (1) Ceiling rent for commercial property, housing accommodations, hotels, motels, rooming houses, farms, and other establishments, together with all privileges

* * *, shall be no greater than the highest rent charged for the same property during the base period. If the property was not rented during the base period, the ceiling price shall be no higher than the highest rent charged during the nearest preceding thirty (30) day period prior to the base period. If the property was never previously rented, the ceiling rent shall be no higher than the ceiling rent charged for similar or comparable property in the locality or area. * * * (4) If a tenant's lease expires during the freeze, his rent cannot be raised to the level which is being paid by new tenants in similar units."

Simply stated, it is the government's position that the rent to be charged on and after August 15, 1971, and through November 13, 1971, to the old tenants, can be no greater than the rent charged for that particular apartment in the thirty (30) day base period preceding August 14, 1971, which is lower than that rate charged the new tenants. It is the position of the defendant corporation that under these rules and regulations it is not bound to charge the same rent charged for any particular apartment, but that it shall be allowed to charge at a level not greater "than the highest of those pertaining to a substantial volume of actual transactions * * * during the thirty (30) day period ending August 14, 1971, for like or similar commodities or services." If the defendant's interpretation is allowed, then, since a substantial volume of the apartments owned by the defendant were rented at a higher rate during the thirty (30) day period, this higher rate could be applied to the old tenants.

■ The defendant raises the question of the constitutionality of the above orders and acts of the Cost of Living Council. It is the opinion of this Court that all of such orders, as above described, are constitutional, and the attack with respect to constitutionality will be overruled. Amalgamated Meat Cutters v. Connally, 337 F.Supp. 737

(1971); United States v. Lieb, 333 F. Supp. 424 (1971).

Aside from the question of constitutionality, the defendant further contends that even though it be conceded that the President had full authority from the Congress to act, the Cost of Living Council has exceeded the authority granted to it by the President through Executive Order No. 11615. While it is true that Executive Order No. 11615 freezes rents for the period of ninety (90) days "at levels not greater than the highest of those pertaining to a substantial volume of actual transactions by each individual business * * * during the thirty (30) day period ending August 14, 1971, for the like commodities or services," it is also provided by Section 3(a) of said order that the Cost of Living Council is delegated all of the powers conferred on the President by the Economic Stabilization Act of 1970.

■■ The Court does not find these two provisions repugnant to each other. Though the Executive Order from the President defined generally the level at which rents were to be frozen, it is apparent that the order was intended to delegate to the Cost of Living Council complete authority to issue regulations and orders and to take whatever actions it determined necessary and appropriate to carry out the President's general purposes. That authority includes the power to define more specifically the level at which rents were to be frozen, as has been done by the Council in its Economic Stabilization Regulation No. 1 above quoted.

■ This regulation specifically provides in Section 3(b) that the highest rent allowable would be that charged during the base period for the same property. Although the defendant argues that Section 3(b) conflicts with Section 2(c), above quoted, the Court does not view these as being contrary. Section 2(c) is a prohibition of charging a rent higher than that prevailing for the . same property or for comparable property for a substantial number of actual transactions during the base peri-

od. Section 3(b) expands on this and limits it to the same property specifically. This interpretation is confirmed in Economic Stabilization Circular No. 101, which specifically describes the situation under scrutiny here and in effect sets the ceiling rent on the apartments in question at a level no higher than the rent charged for the same property during the thirty (30) day base period.

Defendant further buttresses its argument by reference to subsequent rules and regulations promulgated by the Cost of Living Council under Executive Order No. 11627, which extends the freeze under certain conditions after November 15, 1971. In this subsequent regulation, the government says that the base price for a lease of real property is the highest price charged by a person with respect to the same or substantially identical units in a substantial number of transactions during the freeze base period. These regulations establish that a provision in a lease of an interest in real property executed prior to August 15, 1971, which provides for an increased rental to take effect on August 14, 1971, may take effect after November 13, 1971, to the extent such increased rental does not exceed the base price for the rental of such real property. The government has admitted in its presentation to the Court that after November 13, 1971, the defendant may charge a price based not on the price charged for the same property during the base period, but on the price charged for similar units, as long as such price is not greater than the highest of those pertaining to a substantial volume of actual transactions for like or similar commodities or services. The Court finds nothing in the Economic Stabilization Act or in any of the Executive Orders of the President that would prevent the Cost of Living Council from establishing one criterion for the maximum rents to be charged during the initial ninety (90) day period and another criterion for the level at which the rents might be charged after such ninety (90) day period. This they have done.

It is therefore ordered that the defendant corporation shall refund to each of its tenants all moneys paid it for rents for the period commencing August 15, 1971 and terminating November 13, 1971 which were in excess of that charged to each tenant for the same apartment during the thirty (30) day period immediately preceding August 14, 1971. It is further here provided that this order shall not in any way be construed as adjudicating the rights of the parties with regard to rents charged after November 13, 1971, but the same shall be regulated by such orders of the Cost of Living Council as may be promulgated for such period.