HUBER INVESTMENT CORPORATION, Plaintiff,

v.

John CONNALLY, Secretary of the Treasury

and

G. A. Lincoln, Director of Emergency Preparedness, Defendants.

UNITED STATES of America, Plaintiff,

v.

HUBER INVESTMENT CORPORATION, Defendant.

Nos. 4134, 4142.

United States District Court, S. D. Ohio, W. D.

Jan. 12, 1972.

John R. Ensley, Dayton, Ohio, for Huber Investment Corp.

William Milligan, U. S. Atty. S. D. of Ohio, Robert A. Steinberg, Asst. U. S. Atty., Dayton, Ohio, for Connally et al.

## MEMORANDUM OPINION AND ORDER

WEINMAN, Chief Judge.

Two inter-related civil actions have been brought in this Court raising the issue of whether rent increases assessed by the Huber Investment Corporation on September 1, 1971 violate the President's Executive Order No. 11615 and implementing regulations promulgated by the Cost of Living Council which imposed a 90-day stabilization on wages, prices, salaries and rents effective August 15, 1971.

On August 15, 1971 the President issued Executive Order 11615 which in pertinent part provides:

"Section 1. (a) Prices, rents, wages, and salaries shall be stabilized for a period of 90 days from the date hereof at levels not greater than the highest of those pertaining to a substantial volume of actual transactions by each individual, business, firm or other entity of any kind during the 30-day period ending August 14, 1971, for like or similar commodities or services. If no transactions occurred in that period, the ceiling will be the highest price, rent, salary or wage in the nearest preceding 30-day period in which transactions did occur. No person shall charge, assess, or receive, directly or indirectly in any transaction prices or rents in any form higher than those permitted hereunder, and no person shall, directly or indirectly, pay or agree to pay in any transaction wages or salaries in any form, or to use any means to obtain payment of wages and salaries in any form, higher than those permitted hereunder, whether by retroactive increase or otherwise."

On September 21, 1971 the Cost of Living Council promulgated "Rent Guidelines" which were published in Federal Register, Volume 36, Number 183, Pages 18745–18746. So far as is pertinent these "Rent Guidelines" provide:

"Section 601—The ceiling rent for . . . housing accommodations . . . shall be no greater than the highest

rent charged for the *same property* during the base period . . . 'Rent' includes charges for any building, structure, or part thereof, or land pertinent thereto, or services, furnishings, furniture, equipment, facilities and improvements connected with the use of occupancy of such property.

"Section 602(1)—Apartment house and other rent fees are included in the 90-day freeze.

"Section 602(4)—If a tenant's lease expires during the freeze, his rent *cannot* be raised to the level which is being paid by new tenants in similar units."

On September 1, 1971 Huber Investment Corporation, in violation of Regulation 601, increased the rent on its apartments to a level higher than that charged on the same apartments during the 30-day base period, that is, the period ending August 14, 1971. Subsequently, on October 8, 1971 the Huber Investment Corporation commenced Civil Action No. 4134 seeking a declaratory judgment that Regulation 601 is void as inconsistent with the President's Executive Order 11615 and that said Regulation violates Huber's rights under the Equal Protection and Due Process Clauses of the United States Constitution.

On October 18, 1971 the United States of America brought an enforcement action, Civil Action No. 4142, against Huber Investment Corporation pursuant to Section 205 of the Economic Stabilization Act, asking this Court to enter a preliminary and permanent injunction enjoining Huber from violating Executive Order 11615 and ordering Huber to restore to its tenants all unlawfully collected rent increases.

The Huber Investment Corporation and the United States of America have filed cross motions for summary judgment on the grounds that there are no genuine issues of material fact and a judgment should be rendered as a matter of law.

The facts are undisputed. Huber admits that on September 1, 1971 during the 90-day stabilization period it increased rents on its apartment units to a level higher than that charged on the same apartment unit during the 30-day base period ending August 14, 1971. Huber does not challenge the authority of the President to issue Executive Order 11615 but does contend that implementing Regulation 601 is invalid. Since Huber admits that it has violated Regulation 601 the dispositive issue in these actions is whether as a matter of law Regulation 601 is void as inconsistent with the President's Executive Order or denies Huber substantive due process. If the implementing Regulation 601 is valid, Huber has violated the Executive Order and Implementing Regulations and the Government is entitled to the injunctive relief prayed for in its complaint in Civil Action No. 4142.

Under the President's Executive Order the standard enunciated for determining the stabilization level for prices, rents, wages and salaries is that "pertaining to a substantial volume of actual transaction by each individual, business, firm or other entity of any kind during the 30-day period ending August 14, 1971, for like or similar commodities or services." Regulation 601 imposes a rent ceiling based on the rent charged for the same rental property or apartment unit during the 30-day base period. Where property has been rented during the base period or a preceding period, the standard based upon similar or comparable rental units is not utilized and rent is "frozen" at a rate no higher than that charged for the same property during the base period. However, the ceiling standard for new or unrented property is that "generally prevailing for comparable units in the immediate area." Regulation 602(2). Huber contends that the September 1, 1971 rent increases to a level above that charged on the same apartment units during the 30-day base period do not violate Executive Order 11615 because rent on similar units in a substantial volume of actual transactions was increased during the base period and the September 1971 increases merely

brought rent on other units up to a level charged for similar units during the 30-day base period. Thus, Huber is attempting to obtain the benefit of the similar commodity or service language of the Executive Order. Huber argues that implementing Regulation 601, to the extent that it fixes a rent ceiling on the basis of the rent charged for the same rental property during the base period, conflicts with the "substantial volume of actual transactions . . . for like or similar commodities or services" language of the Executive Order.

This argument is without merit. In a recent decision the United States District Court, Western District of Texas, San Antonio Division in the case of United States of America v. Dwight Lieb, 333 F.Supp. 424, the Court considered and rejected an identical argument advanced by a landlord. The Court stated at pages 427 and 428 of its memorandum opinion:

"Defendant insists that he was merely bringing all rental charges after September 1 up to a level no greater 'than the highest of those pertaining to a substantial volume of actual transactions . . . during the 30-day period ending August 14, 1971', and that he is being denied the benefit of the 'substantial volume of actual transactions' treatment referred to in the President's Order. In this connection, he argues that the Cost of Living Council was without authority to initiate the regulation which states:

"Rents. The ceiling rent for commercial property, housing accommodations, hotels, motels, rooming houses, farms and other establishments together with all privileges, services, furnishings, furniture, equipment, facilities, improvements, and any other privileges connected with the use thereof shall be no greater than the highest rent charged for the same property during the base period. If the property was not rented during the base period, the ceiling price shall be no higher than the highest rent charged during the nearest preceding 30-day period prior to the base period. If the property was never previously rented, the ceiling rent shall be no higher than the ceiling rent charged for similar or comparable property in the locality or area. (Emphasis supplied.)

"The defendant's position seems to be that Section 1(a) of the Executive Order restricts the Cost of Living Council to the precise language contained therein, and that the Council therefore, had no authority to dilute the 'substantial volume of actual transactions' phrase used by the President. However, defendant overlooks the fact that in the same Order, which was entered as an emergency measure, the President has not only delegated to the Council all of the powers (except as hereinafter stated) conferred on him by the Economic Stabilization Act of 1970, but he has empowered the Council to prescribe definitions for any terms used, to make exceptions, to grant exemptions, to issue regulations and orders, and to take such other actions as it may determine necessary and appropriate to carry out the purpose of the Order, which was 'to stabilize the economy, reduce inflation, and minimize unemployment'. In addition, the Council was given the power to redelegate its authority to any agency, instrumentality, or officials of the United States, and to utilize the services of any other agencies, Federal or State, as may be available and appropriate.

"It is abundantly clear from a reading of the entire Executive Order that the President intended to and did delegate all of his powers to the Cost of Living Council, except insofar as prices charged for raw agricultural products were concerned. In short the President turned the present economic problems of the nation over to the Cost of Living Council lock, stock and barrel, with few strings attached, as he had a right to do. When he imposed this important responsibility upon the Council he wisely gave it

autonomous power to discharge its heavy burden, even to placing its own definitions upon any terms used by him. This the Council has done, and although some of its regulations to that effect may, in some instances, actually conflict with general language used by the President, it cannot be said that [the Council] was not acting within the scope of the specific authority granted to it by him. Under the circumstances, the regulations promulgated by the Council are valid and the defendant during the 90-day 'freeze' is limited to charging the same rentals he had charged for the same units during the base period."

■ This Court agrees with the well reasoned decision of the District Court in United States v. Lieb, supra, and concludes that Regulation 601, promulgated by the Cost of Living Council, is not rendered invalid because it does not conform to the exact language of Executive Order 11615.

Huber's constitutional challenge to Regulation 601 is also unmeritorious.

■ Under Regulation 601 the standard to be used in determining a rent ceiling on property which was rented during the 30-day base period or a preceding 30-day period is the highest rent charged on the same rental unit during the base period or the nearest preceding 30-day period to the base period. Under Regulation 601(2) the standard to be used in determining the rent ceiling for new or unrented units is that generally prevailing for comparable units in the immediate area. The standard for determining the price or wage ceiling on other services and commodities is that charged for like or similar commodities or services in a substantial volume of actual transactions during the base period. The regulations with respect to rent deprive Huber of the benefit of the rent for similar unit standard on its apartment units rented during the 30-day base period and stabilized rents on these apartment units at the level charged on the same rental property during the 30-day base period. Huber contends that it is denied equal protection of law guaranteed under the Fifth Amendment to the United States Constitution in that prices for other services and commodities are stabilized at the highest price for similar units while rent is stabilized on the basis of a different standard measured by the highest rent per same rental unit. The Court is of the opinion that the utilization of different standards by the Cost of Living Council is not constitutionally invalid.

■ Initially it must be recognized that Huber's reliance on the Equal Protection Clause is misplaced because it is challenging the constitutional validity of a federal regulation and the Fifth Amendment which restricts federal action contains no Equal Protection Clause. The Equal Protection Clause is contained in the Fourteenth Amendment to the United States Constitution which is applicable to the states alone. Giving Huber the benefit of the doubt the only tenable constitutional claim made by Huber is that Regulation 601 deprives Huber of substantive due process guaranteed by the Fifth Amendment.

As a practical matter, the absence of an Equal Protection Clause in the Fifth Amendment lacks significance because the test enunciated by the Supreme Court for determining the validity of a state statute or regulation under the Equal Protection Clause also controls the question of whether a federal statute or regulation violates substantive due process guaranteed by the Fifth Amendment.

■ It is recognized that in the area of economic regulation and social welfare legislation, the Equal Protection Clause is satisfied if the challenged statute or regulation is "rationally based and free from invidious discrimination." Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). The rational basis test enunciated in Dandridge equally controls the issue of whether a federal statute or regulation

violates substantive due process guaranteed by the Fifth Amendment. Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). As the Supreme Court stated in Flemming v. Nester, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960), " . . . we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification. . . ."

The rational basis test was further explained by the Supreme Court in the Dandridge case, supra, at page 485 of 397 U.S., at page 1161 of 90 S.Ct.:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' [Citing case]. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' [Citing case] 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' [Citing case]."

The regulations promulgated by the Cost of Living Council do not manifest a patently arbitrary classification, utterly lacking in rational justification. The purpose of the Economic Stabilization Act of 1970 as amended, the Executive Order and the implementing Regulations of the Cost of Living Council is to stabilize rents, wages, salaries and prices at the highest level paid during the preceding 30-day base period, ending August 14, 1971. In order to fulfill this purpose it was necessary for the Council to adopt a standard which would accurately measure the highest rent paid during the base period, ending August 14, 1971. Where property had been rented during the base period, the rent for

same rental unit provides the most accurate measure of the highest rent charged during the base period and accordingly the Council adopted this standard for fixing a rent ceiling on rental property which was occupied and rented during the base period. In contrast where the property was never rented during the base period or a preceding 30-day period, the rent for the same unit could not be ascertained and used as the rent ceiling standard. Accordingly, the Council fixed a rent ceiling for this type of property on the basis of the highest rent charged for similar or comparable property in the locality or area. Furthermore, with respect to commodities or services whose prices fluctuated during the base period, no price per same unit was available to gauge the price level during the 30-day base period and accordingly the Council justifiably stabilized prices on these commodities on the basis of the highest price per similar unit in a substantial volume of actual transactions. While the Council in the exercise of its delegated authority might have imposed a rent ceiling on all types of rental property on the basis of the highest rent paid on similar rental units during the base period, it cannot be said that the decision of the Council to stabilize rent on property rented during the base period on the basis of the highest rent paid for same rental unit during the base period is arbitrary or capricious and without rational justification. Accordingly, the Court concludes that Regulation 601 does not offend the Due Process Clause of the Fifth Amendment.

■ The failure of the Economic Stabilization Act as amended, the Executive Order and the regulations to grant Huber an administrative hearing wherein it might test the validity of the implementing regulations does not deprive Huber of procedural due process because Section 205 of the Economic Stabilization Act as amended requires that an application for injunction on the part of any agency of the Government must be brought in the proper United States District Court, thus assuring that any al-

leged violator of the Act or Executive Order will be afforded a hearing before his acts or practices may be enjoined.

In accordance with the foregoing, plaintiff's request for the issuance of a declaratory judgment declaring Regulation 601 void as inconsistent with the President's Executive Order and constitutionally invalid under the Due Process Clause of the Fifth Amendment hereby is denied and Huber's complaint in Civil Action No. 4134 hereby is dismissed on the merits with prejudice.

The defendant Huber Investment Corporation has admitted that it violated Regulation 601 promulgated by the Cost of Living Council by increasing rents on the same apartment units on September 1, 1971 in excess of the amounts charged on the same rental units during the 30-day base period ending August 14, 1971. In view of the finding of this Court that Regulation 601 is valid it follows, therefore, that the United States of America is entitled to the injunctive relief prayed for in its complaint in Civil Action No. 4142.

It is, therefore, ordered, adjudged and decreed by the Court that the defendant, Huber Investment Corporation, be, and it is hereby, permanently enjoined during the duration of Executive Order 11615 and amending Executive Order 11627 from charging, assessing or receiving directly or indirectly in any transaction, rents in any form in excess of the highest rents charged for the same apartments or dwellings during the 30-day base period ending August 14, 1971; and

The defendant, Huber Investment Corporation, is hereby ordered and mandatorily enjoined to restore the rents charged by him for each apartment to the level charged for the same apartment during the 30-day period ending August 14, 1971, and to restore the status quo ante by making restitution to all tenants of all rents charged and received in excess of those amounts which were charged and received during the 30-day base period ending August 14, 1971; and

It is further ordered that any increase in rent rates, after November 13, 1971, assessed by Huber Investment Corporation in conformity with Regulations 300.-15 and 300.407 issued by the Price Commission under Phase II of the economic stabilization program, published in the Federal Register, Vol. 36, No. 242, December 16, 1971, be excepted from the terms of this injunctive order.

Costs shall be taxed against Huber Investment Corporation.