**RETAIL CLERKS INTERNATIONAL ASSOCIATION, AFL–CIO, et al., Plaintiffs,**

**v.**

**George P. SHULTZ et al., Defendants.**

**Civ. A. No. 2235–71.**

United States District Court, District of Columbia.

Dec. 20, 1972.

Carl L. Taylor, Washington, D. C., for plaintiffs.

Bruce G. Forrest and Robert E. Easton, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

RICHEY, Judge.

This cause came before the Court on the parties' Cross-Motions for Summa-

ry Judgment. Plaintiff Union, Retail Clerks International, and ten affiliated local unions bring this action in behalf of two hundred and sixteen affiliated local unions and the seven hundred thousand employees represented by them. The action was initiated by the plaintiffs to obtain judicial review of certain actions of the Cost of Living Council and to have those actions enjoined and declared invalid. The defendants are sued individually and as members of the Cost of Living Council.

## I. *Facts*

The following facts are undisputed. On August 15, 1970, Congress enacted the Economic Stabilization Act of 1970 (Act),[1] contained in Title II of Public Law 91–379, 84 Stat. 799. Section 202 of the Act authorized the President to issue such orders and regulations as he might deem appropriate to stabilize prices, rents, wages and salaries. Section 203 gave him authority to delegate the performance of any functions under the Act to such agencies of the United States as he deemed appropriate.

Pursuant to his authority, the President issued Executive Order 11615,[2] Section 1(a) of which declared that "wages and salaries shall be stabilized for a period of 90 days . . . at levels not greater than the highest of those [during the 30 day base period] for like or similar . . . services." Section 3(a) delegated to the Cost of Living Council the President's powers as conferred by the Act, and Section 4(a) specified that the Cost of Living Council in carrying out the provisions of the Order had the authority to "(i) prescribe definitions for any terms used herein, (ii) make exceptions or grant exemptions, (iii) issue regulations and orders, and (iv) take such other actions as it

deems necessary and appropriate to carry out the purpose of this Order." Section 7 authorized fines of $5,000 and injunctions against violations of orders or regulations issued under the Order.

Subsequently, the Cost of Living Council issued Order No. 1 [3] which delegated to the Director of the Office of Emergency Preparedness the "responsibility and authority to implement, administer, monitor, and enforce the stabilization of . . . wages, and salaries as directed by Section 1" of Executive Order 11615. The Cost of Living Council limited its delegation by requiring that "significant policy decisions shall be made only after consultation with the Council." Citing this authority, the Office of Emergency Preparedness issued Economic Stabilization Regulation No. 1,[4] Section 2(b) of which provided:

"No employer shall pay and no employee shall receive a wage, salary, or other form of compensation at a rate higher than that paid or received or in effect during the base period . . . Such remuneration shall be based upon a substantial number of actual transactions for services of like or similar nature."

Section 3(c) of the Regulation provided in part:

"Deferred wage or salary increases which were negotiated to take effect in the future, . . . and routine in-grade increases not in effect on or before August 14, 1971, are not permitted."

## II. *Issues Presented*

The parties agree that there are no material facts in dispute. The case turns on questions of law which have been raised for the Court's determina-

---

1. P.L. 91–379, 84 Stat. 799; as amended, P.L. 91–558, 84 Stat. 1468; P.L. 92–8, 85 Stat. 13; P.L. 92–15, 85 Stat. 38; P.L. 92–210, 85 Stat. 743. The Act is set forth at 12 U.S.C. § 1904, note. The Economic Stabilization Act Amendments

of 1971 are set forth at 12 U.S.C. § 1904, note (Supp. I, 1971).

2. 36 Fed.Reg. 15727 (1971).

3. 36 Fed.Reg. 16215 (1971).

4. 36 Fed.Reg. 16515 (1971).

tion.[5] These issues are 1) whether the prohibition against progression increases as provided in Section 3(c) of Economic Stabilization Regulation No. 1 violated the standard of fairness and equity inherent in the Act and was unconstitutional as applied; and 2) whether the prohibition against progression increases violated the "standard" announced by the Office of Emergency Preparedness that wage "ceilings go with the job, not the man." [6]

### III. Discussion

A. *The Prohibition Against Progression Increases Does Not Violate the Standards of Fairness and Equity Inherent in the Act, Nor Is It Discriminatory as Applied.*

The thrust of plaintiffs' contentions here appears to be that because the freeze on pre-established individual increases up to the highest rate for the job had the effect of freezing individuals performing the same job into different hourly wage rates, the prohibition denied equal treatment to employees performing the same job. Plaintiffs argue that by denying equal treatment, the defendants violated the standards of fairness and equity inherent in the Economic Stabilization Act of 1970, and violated their obligation to provide substantive due process under the Fifth Amendment.

■ Initially, the Court notes that Section 211(c) of the Economic Stabilization Act Amendments of 1971 provides in part:

"In any action commenced under this title in any district court of the United States in which the court determines that a substantial constitutional issue exists, the court shall certify such issue to the Temporary Emergency Court of Appeals."

Plaintiffs have not filed any written pleadings claiming that a substantial constitutional question exists requiring certification to the Temporary Emergency Court of Appeals, nor does it appear that any such question is involved in this action. Accordingly, the Court finds that no certification of issues need be made to the Temporary Emergency Court of Appeals.

■ There is no doubt that the Economic Stabilization Act contains a "standard of broad fairness and avoiding gross inequity." Amalgamated

---

5. Prior to the Economic Stabilization Act Amendments of 1971, P.L. 92–210, 85 Stat. 743 (Dec. 22, 1971), a three-judge court held that the judicial-review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, applied to actions of the Cost of Living Council. Amalgamated Meat Cutters & Butcher Work. v. Connally, 337 F.Supp. 737 (D. D.C.1971) (Three-judge court). Section 211 of the 1971 Amendments now specifically provides the exclusive system for judicial review of actions taken under the Act, and vests original jurisdiction in the district courts of the United States. Section 210 permits suits for injunctive and declaratory relief.

6. On November 13, 1971, the 90-day freeze, or Phase I, of the President's stabilization program ended. Phase II regulations currently in effect generally provide for annual aggregate salary increases of 5.5 percent. 6 C.F.R. Sec. 201.10 (Supp. Oct. 1, 1972). In January 1972, the newly established Pay Board adopted specific provisions to cover lon-

gevity and merit increases which matured during the freeze period. The new regulation, recently recodified as 6 C.F.R. Sec. 201.31, see 37 Fed.Reg. 24960 (1972), permits retroactive payment of progression increases that were scheduled to take effect prior to the end of Phase I pursuant to employment contracts existing before August 15, 1971. If these retroactive increases exceed 7 percent, the Pay Board must receive prenotification of the proposed retroactive payment. If there is no challenge by a party at interest, the Chairman of the Board, or by two or more members of the Board within 28 days of such prenotification, such payments may be made. In their pleadings, the defendants contended that until the plaintiffs had received an adverse ruling on any of their contracts from the Pay Board, the other issues presented in this case were not ripe for judicial review. At the hearing, however, it was stipulated that adverse rulings had in fact been received by the plaintiffs. Thus defendants' contention is no longer in issue.

Meat Cutters & Butcher Work. v. Connally, 337 F.Supp. 737, 758 (D.D.C.1971) (Three-judge court). However, the standard must be viewed within the framework of the purpose of the Act to stabilize the economy and stem inflation, and the broad discretion conferred upon the President to effect that purpose. The importance of the purpose was aptly stated in California Teach. Ass'n. v. Newport Mesa Unified Sch. Dist., 333 F.Supp. 436, 443 (C.D.Col.1971), where the court said:

> "There can be no question that the Government's efforts in fighting inflation and stabilizing the economy are obviously directed to the protection and preservation of a most important governmental interest that can surely be characterized as vital to the lives and fortunes of the citizens of the United States . . . ."

The courts have recognized that preservation of this vital interest may cause individual hardships, but those hardships do not inevitably amount to the deprivation of constitutional rights. See United States v. Great Atlantic and Pacific Tea Co., 342 F.Supp. 272 (D.Md. 1972).

Section 1(a) of Executive Order 11615 makes it clear that the Order was intended to delegate to the Cost of Living Council "complete authority to issue regulations and orders and to take whatever actions it determined necessary and appropriate to carry out the President's general authority." United States v. Intone Corporation, 334 F.Supp. 905, 908 (N.D.Tex.1971). See also United States v. Lieb, 462 F.2d 1161 (Em.Ct. of App. 1972). That authority must necessarily include the power to define more specifically the level at which wages are to be frozen.

In Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), the Supreme Court held that federal statutes comply with the due process clause of the Fifth Amendment if they meet the rational basis test. That test was enunciated in Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970):

> "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' . . . 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' . . . 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' "

See also Montgomery Ward & Co. v. Bowles, 147 F.2d 858, 863 (Em.Ct. of App. 1945), where the court stated:

> "There is no requirement that a regulation to be fair and equitable must maintain exact equality between the rights and benefits of those subject to it where they are differently situated and the problems of price control apply to them differently."

The wage-rate classes allegedly caused by the prohibition against progression increases contained in Regulation No. 1 were not created by the Regulation, but were merely frozen as they existed prior to the initiation of Phase I. To have allowed the in-grade increases may very well have frustrated the important purpose of the Economic Stabilization Act to stem inflation. It is apparent that there was a rational basis for continuing the classes in existence during the course of Phase I.

Plaintiffs place great emphasis on two exceptions to the general prohibition against progression increases which are claimed to further illustrate the basic inequity of the general prohibition. The first exception, contained in Economic Stabilization Circular No. 101, Section 502(17), allowed an employee whose progression increases were frozen dur-

ing Phase I to seek new employment and receive any salary "within the range which the qualifications of the applicant justify as long as the average wage paid by the firm in this job classification do not increase." [7] The second exception, contained in Economic Stabilization Circular No. 102, Section 502(16), provided that wages paid to workers transferring from a closed plant or office to a different geographical location could be paid up to the ceiling that applied to the job at the new location.[8] The claim is made that these two exceptions unlawfully discriminated against employees who remained with the same employer at the same location.

The rationale developed by the cases cited above is equally as applicable to this contention as it is to plaintiffs' other claim of denial of equal treatment. Differentiating factors of need and changes in circumstances were clearly sufficient to create reasonable and distinct classes with regard to employees who remained on the same job at the same location as opposed to employees who changed employers or those who transferred from closed factories or offices. As applied to the former, the contested Regulation was not unlawfully discriminatory.

In addition, it is apparent that the Cost of Living Council, faced with a large and complex regulatory task, focused first on aggregate problems and then developed specific guidelines to meet specific problems of need or equity. As such, the two exceptions to general policy cited by the plaintiffs were necessary examples of the flexibility required by the Cost of Living Council during this early period in a complex area of regulation. As recognized in Amalgamated Meat Cutters & Butcher Work. v. Connally, *supra*, 337 F.Supp. at 758, "the law does not contemplate what is manifestly impracticable, or suppose that all problems are to be taken care of at once."

### B. *The Prohibition Against Progression Increases Did Not Violate the Defendants' Own Standards.*

Finally, the plaintiffs argue that the prohibition against progression increases departed from the "standard" announced in Economic Stabilization Circular No. 102, Section 503(1), which allegedly interpreted Executive Order 11615 and Regulation No. 1 to mean that "ceilings go with the job, not the man." [9] They claim that the effect of this alleged departure was to apply the freeze to the worker, not the job, resulting in an arbitrary and capricious violation of the above "standard."

The Court again notes that the wage-rate classes frozen by Phase I regulations were not created by those regulations, but were merely perpetuated for a specific period of time in the same form in which they had existed prior to the initiation of the freeze. The Court has already indicated its opinion that the prohibition against progression increases did not violate the general standard of fairness and equity inherent in the Economic Stabilization Act. Nor does it believe that the freeze as applied to pre-existing wage-rate differentials between employees performing the same job for the same employer had any more effect in its application to the worker than the freeze as applied to pre-existing wage-rate differentials between employees performing the same job for different employers.

Moreover, the Court is not convinced that the "standard" that "ceilings go with the job, not the man" was of such limiting effect on the Council's actions that a departure therefrom would constitute arbitrary or capricious action. The Economic Stabilization Circular in which the above-quoted phrase was contained was issued subsequent to the promulgation of Regulation No. 1 prohibiting progression increases. The Circular was issued as a guide consolidating

---

7. 36 Fed.Reg. 18739 (1971).

8. 36 Fed.Reg. 20482 (1971).

9. 36 Fed.Reg. 20490 (1971). Similar language is also used in Section 502(16) of the Circular.

"in one document all the determinations issued by the Cost of Living Council incorporated in economic circulars previously published."[10]  It was made clear that the guiding statements were not intended to constitute legal rulings for cases not conforming to situations clearly intended to be covered.  Under these circumstances, the alleged "standard" appears in effect to be little more than a part of that guide.  It did not constitute a self-imposed limitation on Council action at a time when there was need for the greatest flexibility.

IV.  *Conclusion*

In accordance with the aforegoing, the Court finds as a matter of law that the defendants herein are entitled to summary judgment.

---

10.  Economic Stabilization Circular No. 102, *supra.*